## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**APPRILL WALDEN**
**5501 45th Avenue, #427**
**Hyattsville, MD 20781**

     **Plaintiff,**

     **v.**

                             **Civil Action   No. 1:15-CV-1034**

**PATIENT-CENTERED OUTCOMES**
**RESEARCH INSTITUTE**
**1828 L Street, NW, Suite 900**
**Washington, DC 20036**

     **Defendant.**

---

## COMPLAINT

---

COMES NOW Plaintiff Apprill Walden by and through her attorneys of Emejuru and Nyombi L.L.C., and for her complaint avers and alleges as follows:

### PRELIMINARY STATEMENT

Apprill Walden brings this action against her former employer Patient-Centered Outcomes Research Institute (hereinafter "PCORI") for their willful, reckless, wanton and malicious violation of the District of Columbia Human Rights Act D.C Code § 2-1401.01 *et seq*. which caused her to sustain injury and monetary damages.

## JURISDICTION

1. Personal jurisdiction exists over Defendants as they are doing business and have the necessary minimum contacts within the District of Columbia.

2. Subject matter jurisdiction exists through diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand ($75,000.00) and also under D.C. Code Ann. Section 11-921.

## VENUE

3. Venue is proper in the District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant is a resident of this judicial district and because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Apprill Walden is an African-American female adult resident of the United States and the State of Maryland who, at all times relevant to this Complaint, was an employee with a disability as defined by the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq* ("DCHRA").

5. Defendant is a private organization with the capacity to sue and be sued in this Court with its corporate headquarters located at 1828 L. Street, NW, Suite 900, Washington D.C. 20036.

## FACTUAL ALLEGATIONS

6. Plaintiff Apprill Walden as an employee and a person entitled to the protection of the District of Columbia Human Rights Act.

7.  At all times pertinent to this action, Defendant is an employer within the meaning of the D.C. Human Rights Act as it employed Ms. Walden for compensation and Ms. Walden engaged in work and acted in interest of the employer for compensation.

8.  On May 19, 2014, after successfully passing a highly competitive recruitment screening process, Ms. Walden was offered the position of Senior Media Relations Specialist reporting to Christine Stencel, Associate Director for Media Relations.

9.  Ms. Walden was hired based on her resume, exemplary references, demonstrated enthusiasm for public relations work and expertise.

10. From the first day of work, Ms. Walden strived against a deep learning curve for her new job by working weekends and nights. She hit the ground running with much enthusiasm and demonstrated relentless work ethic to learn the ins and outs of the organization.

11. In the following months, Ms. Stencel would assess and praise Ms. Walden for her performance and work ethic.

12. On June 10, 2014, Ms. Walden unfortunately sustained a serious spine injury in a car accident. Ms. Walden was taken into Virginia Hospital Center immediately after the accident for treatment and evaluation.

13. The spinal injury causes severe neck, shoulder and back pain, headaches, dizziness and difficulty sleeping, and Ms. Walden was declared disabled with a spinal disorder.

14. This disability affects Ms. Walden's major life activities of walking, bending, sitting, lifting, and standing.

15. On June 13, 2014, Ms. Walden sought an orthopedic specialist, Richard S. Meyer, M.D. Upon the above conditions, Dr. Meyer ordered Ms. Walden to undergo continuous physical therapy sessions for treatment of her disability.

16. Soon after the injury, in or around June 2014, Ms. Walden informed Ms. Stencel about her disability and indicated that she would require reasonable accommodations for her disability.

17. Beginning from August 2014, Ms. Walden had to cancel her physical therapy sessions due to her work schedule.

18. After multiple treatment cancellations due to her work schedule, Ms. Waldens Doctor began to take notice. Subsequently, Dr. Meyer completed the "PCORI Request for Medical Information Related to Request for Workplace Accommodation" to satisfy PCORI's accommodation procedure.

19. The form, attentioned to Mitch Eisman, Director for Human Resources and Administration for PCORI, indicated that Ms. Walden was not able to perform all of the essential functions of her position and her sitting impairments that would restrict her from performing her job duties without reasonable accommodations. Dr. Meyer also specified that Ms. Walden's physical therapy schedule and continued symptomatology required her to work three (3) days at home and (2) days in office per week for at least (8) weeks. The doctor further recommended an

ergonomic work chair with lumbar and cervical support as a corrective device to help with pain incurred from sitting at work.

20. In or around October 2014, Ms. Walden met with a human resources representative Mitch Eisman and Ms. Stencel to work out an accommodation agreement. After intense negotiation, due to high demand in workload and Ms. Walden's eagerness to continue providing exemplary work for the organization, Ms. Walden agreed to work from home twice a week, despite her doctor's recommendation.

21. During the same meeting, Ms. Walden also voiced to both Mr. Eisman and Ms. Stencel her concerns about her workload and Ms. Stencel's negative treatment to Ms. Walden.

22. Ms. Walden mentioned to Mr. Eisman that she felt Ms. Stencel was unsupportive and did not want to help her as a supervisor because Ms. Stencel often ignores her emails or calls when Ms. Walden asked for time off to go to her medical appointments.

23. The Department of Human Resource did not address Ms. Walden's concerns subsequently.

**<u>RETALIATION</u>**

24. In or around November 2014, after a work-from-home agreement had been struck by the parties, Ms. Stencel required Ms. Walden to be present for a one-on-one meeting before she would complete the supervisorial portion and submit it to the

Human Resource Department. The meeting was held without the presence of Human Resources.

25. Ms. Walden, confused and baffled about the why Ms. Stencel would hold such a meeting, complied with the request and asked Ms. Stencel once again about her evaluation of Ms. Walden's performance and reliability thus far.

26. Ms. Stencel responded that she only agreed to the flexible work schedule because Ms. Walden's performance lever was "fine and reliable thus far." She further indicated that she had not heard or seen at any point, where Ms. Walden had not been accessible or not completed a deadline.

27. Despite the consistent positive comments, Ms. Walden started to experience adverse actions and retaliation by Ms. Stencel.

28. Ms. Stencel arbitrarily required Ms. Walden's to undertake an overwhelming amount of work, without unclear instruction on priority and deadlines, and unreasonable demand of perfection.

29. Ms. Walden had initiated conversations about her workload with Ms. Stencel multiple times, but none of the conversations changed Ms. Stencel's negative attitude and unreasonable expectation of Ms. Walden.

30. To satisfy the overwhelming workload, Ms. Walden had to continue to miss her physical therapy sessions and the excessive time spent working severely slowed down her recovery.

31. On days Ms. Walden was scheduled to attend physical therapy appointments, Ms. Stencel would steadfastly discourage her from attending and insist she "skip" physical therapy in order to meet or exceed deadlines. Further, Ms. Stencel required Ms. Walden to stay late on days that she knew were scheduled for physical therapy sessions.

32. On more than one occasion, Stencel would ignore or refuse to approve Ms. Walden's Paid Time Off ("PTO") and require Ms. Walden to work on days in which she was approved for PTO.

33. On January 16, 2015, Ms. Stencel arbitrarily required Ms. Walden to conduct a "six month review" of Ms. Walden's performance. None of Ms. Walden's colleagues have done or even heard of such a review. Further, terms of Ms. Walden's employment only called for an annual performance review.

34. On February 25, 2015, an appraisal report was generated for Ms. Walden.

35. In the report, Ms. Stencel's evaluation of Ms. Walden's performance diverged far from her early positive comments and Ms. Walden's self-evaluation. Further, the report, used as a pretext to terminate Ms. Walden, on more than one occasion, cited her for "absences."

36. As a result of the arbitrary, underhanded and unreasonable performance evaluation, Ms. Stencel required Ms. Walden to conform to an unnecessary Performance Improvement Plan ("PIP").

37. The PIP, in conjunction with her regular job duties, required an unreasonable amount of work that placed Ms. Walden to perform job duties and functions at a far greater level than was initially required and created in such a manner that it would be impossible for her to meet and perform at the extremely high level of accuracy required by Ms. Stencel.

38. In March 2015, Ms. Walden steadfastly refused to sign the faulty Performance Improvement Plan because it was reasonably foreseeable that she would not be able to meet the terms and conditions laid out by Ms. Stencel.

39. On March 26, 2014, Ms. Walden was forced to resign involuntarily as the situation became unbearable to any reasonable employee.

40. Subsequent to her resignation, Ms. Stencel posted two positions on the PCORI website directly reporting to her, Media Relations Specialist and Senior Media Relations Specialist. The duties of both positions combined made up the responsibilities descried in the Ms. Walden's Performance Improvement Plan.

## CAUSES OF ACTION

## COUNT 1

## DISPARATE TREATMENT BASED ON DISABILITY IN VIOLATION OF THE

## DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

41. Ms. Walden incorporates by reference all paragraphs of this Complaint as though fully stated herein *seriatim*.

42. By the above facts, Ms. Walden has a physical or mental condition that substantially limits a major life activity. Therefore, Plaintiff is a member of a protected class.

43. By the above facts, Defendant PCORI violated the District of Columbia Human Rights Act by discriminating against Walden because of her disability. The Plaintiff suffered adverse employment action at the hands of Defendant's Christine Stencel who treated Ms. Walden less favorably because she had a disability.

44. The Plaintiff experienced materially adverse consequences affecting the terms, conditions or privileges of employment. Walden's employment with Defendant called for an annual review. Walden was subject to an arbitrary 6-month performance review in which none of her colleagues had ever heard of. The 6 month review resulted in an insurmountable and the impossible achievement of a Performance Improvement Plan in which Defendant knew she could not achieve. Such an unfavorable action gives rise to an inference of discrimination or an inference that Defendant took because of Walden's membership in a protected class.

45. WHEREFORE, for Defendant PCORI's disability discrimination in violation of the DCHRA, Plaintiff Walden prays that this Court enter Judgment against PCORI for; any wages, salary, employment benefits, or other compensation; any and all damages acceptable by law, pre-judgment interest at the legal rate, post-

judgment interest at the judgment rate, attorney's fees and costs of this suit, equitable relief, and such other and further relief as Plaintiff Walden may be entitled to

## COUNT  2

## RETALIATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

46. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated here in *seriatim.*

47. At all times pertinent to this action Defendant was an employer subject to the provisions of the D.C. Human Rights Act, 2-1401 *et. Seq.* of the District of Columbia Code.

48. At all pertinent times, Walden was an employee entitled to protection under the D.C Human Rights Act.

49. The D.C Human Rights Act prohibits discrimination in employment based on an individual's disability and prohibits retaliation for engaging in a protected activity.

50. Defendant PCORI, in blatant violation of the D.C Human Rights Act, knowingly, wantonly and intentionally engaged in unlawful retaliation against Ms. Walden after she disclosed that she had a disability.

51. After disclosing that she had a disability, Plaintiff Walden was subjected to adverse action. More specifically, Defendant's Christine Stencel required Ms. Walden's to undertake an overwhelming amount of work, without unclear

instruction on priority and deadlines, and unreasonable demand of perfection, discouraged Walden from attending physical therapy sessions and insisted that she "skip" physical therapy sessions in order to meet or exceed deadlines, required Ms. Walden to stay late on days that she knew were scheduled for physical therapy sessions, ignored or refused to approve Ms. Walden's Paid Time Off ("PTO") and required Ms. Walden to work on days in which she was approved for PTO, conducted an arbitrary "six month review" of Ms. Walden's performance, and subjected Ms. Walden to an insurmountable  Performance Improvement Plan.

52. A causal link exists between Defendant's actions and the protected activity engaged in by Apprill Walden.

53. Defendant wantonly and intentionally retaliated against Apprill Walden.

54. Defendant has no legitimate non-business reason for such retaliatory acts.

55. Ms. Walden is now suffering and will continue to suffer irreparable injury and monetary damages.

56. WHEREFORE, for Defendant PCORI's retaliation in violation of the DCHRA, Walden prays that this Court enter Judgment against Seabury for; any wages, salary, employment benefits, or other compensation; any and all damages acceptable by law , pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees and costs of this suit, equitable relief, and such other and further relief as Plaintiff Walden may be entitled to.

## COUNT 3

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE DISTRICT OF

## COLUBMIA HUMAN RIGHTS ACT

57. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated here in *seriatim*.

58. The D.C Human Rights Act prohibits an employer from creating or condoning a hostile or abusive work environment for any reason that is based on a statutorily protected status.

59. Ms. Walden was a member of a protected class, subjected to unwelcome harassment by Defendant's Christine Stencel, and based on the above captioned facts, harassed Plaintiff because Plaintiff Walden disclosed to her that she was disabled. Specifically, Defendant's actions subjected Plaintiff to discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment.

60. Defendant's harassment substantially affected a term, condition, or privilege of Ms. Walden's employment, and the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.

61. As a direct and proximate result of PCORI's actions, Plaintiff Walden has suffered mental anguish, emotional distress, personal humiliation, indignity,

12

embarrassment, inconvenience, stigma, pain, mental shock, depression, damage to her personal and professional reputation, justifying an award including, but not limited to damages for emotional injury, compensatory, punitive and consequential damages against Defendant.

62. WHEREFORE for Defendant PCORI's hostile work environment in violation of the DCHRA, Walden prays that this Court enter Judgment against PCORI for; any wages, salary, employment benefits, or other compensation; any and all damages acceptable by law, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees and costs of this suit, equitable relief, and such other and further relief as Plaintiff Walden may be entitled to.

## COUNT 4

## CONSTRUCTIVE DISCHARGE IN VIOLATION OF THE DISTRICT OF COLUBMIA HUMAN RIGHTS ACT

63. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated here in *seriatim*.

64. The D.C Human Rights Act prohibits an employer from intentional discrimination that forces an employee to resign or involuntarily terminate her employment.

65. Defendant intentional discriminated against Ms. Walden, deliberately making her working conditions so intolerable that it forced her to resign.  An array of aggravating factors mentioned above justified Walden's to end her employment.

66. The Defendant made her working conditions so intolerable by *inter alia*, subjecting Plaintiff to an arbitrary 6-month performance review. The terms and conditions of Plaintiff's employment only called for a year annual review.

    Subsequently the Defendant subjected Plaintiff to a malicious and far-reaching performance improvement plan. The Defendant's presented Plaintiff with the PIP, knowing that she would not be able to meet its extremely stringent terms and conditions. The Defendant later split the performance improvement plan in two for online job postings after Plaintiff's involuntary discharge.

67. WHEREFORE for Defendant PCORI's intentional conduct leading to Plaintiff's involuntary discharge, Walden prays that this Court enter Judgment against PCORI for; any wages, salary, employment benefits, or other compensation; any and all damages acceptable by law, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees and costs of this suit, equitable relief, and such other and further relief as Plaintiff Walden may be entitled to.

## PRAYER FOR RELIEF

68. WHEREFORE, Plaintiff Apprill Walden prays for judgment in her favor and against Defendant PCORI for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief,

relief pleaded in the preceding paragraphs, and such other and further relief as Plaintiff Walden may be entitled to by bringing this action.

**JURY DEMAND**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CASE**

Respectfully submitted and dated this 1st day of July, 2015,


**The Law Office of Henry A. Thompson II**


By: /s/ Henry A. Thompson, II
     HENRY A. THOMPSON II, ESQ
     Bar No 978225.
     641 S St. NW, Washington, DC 20001
     henry@hat2law.com
     Tel: (202) 719-2529



**EMEJURU & NYOMBI LLC**

By: _/ s /_ Ikechukwu Emejuru_____
     Ikechukwu "Ike" Emejuru, Bar No. 19262
     Andrew Nyombi, Bar No. 19353
     Emejuru & Nyombi L.L.C.
     Attorneys and Counselors at Law
     8403 Colesville Road
     Suite 1100
     Silver Spring, MD 20910
     Telephone: (240) 638 – 2786
     Facsimile: 1-800-250-7923
     iemejuru@enylaw.com
     anyombi@enylaw.com
     ATTORNEYS FOR PLAINTIFF